UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19 CR 533 HEA ) |
| MEGAN LOWE, | ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant MEGAN LOWE, represented by defense counsel GREGORY SMITH, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Distribution of a Controlled Substance, a lesser offense necessarily included in Count II of the charge, the government agrees to move for the dismissal as to the defendant of Count I at the time of sentencing. Moreover, the United States agrees that

1

no further federal prosecution will be brought in this District relative to the defendant's distribution of a controlled substance on October 5, 2018, of which the Government is aware at this time.

Defendant acknowledges that this disposition confers upon her the benefit of eliminating the 20 year mandatory minimum sentence that would be required if she were to be convicted of either of the two offenses as currently charged in the Indictment. The parties agree that the controlled substance distributed by defendant to M.J. was the "but for" cause of the death of M.J. As a result, the plea agreement establishes a more serious offense than the "offense of conviction." Section 1B1.2(c) provides, "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those [sic] offense(s)." Pursuant to Section 1B1.2, the parties agree that the Court should apply the guidelines applicable to the more serious offense as established herein and admitted under oath by defendant. The parties recognize that the maximum possible penalty remains 20 years pursuant to Title 21, United States Code, Section 841(b)(1)(C) and Section 1B1.2, Application Note 1.

**Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the parties agree that the defendant's sentence should be 168 months. This agreement shall abide, notwithstanding the application or non-application of any particular Sentencing Guidelines, including any Guidelines contemplated by this agreement. If the Court informs the parties prior to sentencing that it will reject this agreement or that it intends to sentence defendant to a sentence not in conformity with this agreement, then either party**

may withdraw from the plea agreement and the defendant will have an opportunity to withdraw her guilty plea pursuant to Rule 11(c)(5).

### 3. ELEMENTS:

As to the lesser offense necessarily included in Count II, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. That on or about October 5, 2018, within the Eastern District of Missouri, the defendant distributed a controlled substance, and;

2. That she did so knowingly and intentionally.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On or about October 5, 2018, co-defendant Kimberly Ann Basler ("Basler") engaged in a series of communications with E.O., a person whose identity was known to Basler and is now known to defendant Megan Lowe. During those communications, E.O. asked Basler whether she could provide him with morphine pills. Basler then contacted her friend, defendant, Megan Lowe ("Lowe"), who confirmed that she had morphine and would sell some to E.O. Basler agreed to introduce E.O. to Lowe. The morphine had been prescribed to Lowe's husband, who had recently died of cancer.

On October 5, 2018, co-defendant Basler drove with E.O. to the parking lot of the Loch Haven Nursing Home in Macon, Missouri within the Eastern District of Missouri. When they

3

arrived at Loch Haven Nursing Home, Basler and E.O. met with Lowe, who was employed at the facility. In a hand-to-hand transaction in the parking lot of Loch Haven Nursing Home on October 5, 2018, defendant Lowe sold $180 worth of morphine to E.O. Basler acted as the broker for that transaction. Her participation was absolutely essential, inasmuch as E.O. and Lowe were not acquainted prior to that date.

After purchasing morphine from Lowe during the transaction brokered by Basler, E.O. took the morphine to his residence in Columbia, MO. That night, E.O. ingested some of the morphine, as did M.J. The next day, on October 6, 2018, E.O. and M.J. ingested some more of the morphine. M.J. was found deceased the following morning, and E.O. was found unresponsive and nearly deceased. Police reviewed E.O.'s telephone text and Facebook messages and, with his assistance, identified Basler. When interviewed, Basler waived her *Miranda* rights and admitted to having brokered the morphine transaction. She identified Lowe as the source of the morphine. Police then interviewed Lowe and, in a post-*Miranda* interview, Lowe admitted to having sold $180 worth of morphine to E.O. (although she did not know his name at that time). Lowe acknowledged that her conduct was "wrong" and advised police that she sold the morphine to make money. Both Basler's and Lowe's interviews were recorded.

Expert testimony in the event of trial would establish that M.J. died as a result of "morphine and clonazepam intoxication." Further testimony would establish that the "level of 7-amino clonazepam, an active metabolite of clonazepam, is not elevated," but that "this drug can be dangerous in combination with opioids." M.J. would not have died "but for" the ingestion of the morphine distributed by Basler and Lowe.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 38, as found in Sections 2D1.1(a)(2) and 1B1.2(a). The parties agree that the plea agreement establishes the commission of an offense more serious than the "offense of conviction," and, as a result, the Court should utilize the base offense level corresponding to that more serious offense.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon

5

information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

**c. Other Adjustment(s) and Disputed Adjustments:** None.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 35. However, the parties' recommendation for a sentence of 168 months shall abide, notwithstanding the application or non-application of any Sentencing Guidelines herein, and irrespective of the base offense level and/or total offense level determined by the Court.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. However, in the event that the Court declines to impose a sentence of 168

months, either party shall have the right to withdraw from the plea agreement as provided by Fed. R. Crim. P. 11(c)(1)(C).

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant to a term of 168 months, both parties waive all rights to appeal all sentencing issues, including any issues relating to the Base Offense Level and Criminal History Category.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be

7

sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by

the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately. In addition, the Court may impose restitution (in addition to any penalty authorized by law) which will also be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

  **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be

tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

10

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring or as otherwise provided herein.

9/2/2020
Date

SIRENA MILLER WISSLER #55374MO
Assistant United States Attorney

9-2-20
Date

MEGAN LOWE
Defendant

9/2/2020
Date

GREGORY SMITH
Attorney for Defendant

12